UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ADELAIDE CORNELL,
    Plaintiff,

vs.                                        05-1389

RAY GUBBLES, et al.
    Defendants.

## ORDER

This cause is before the court for consideration of the defendants' motion for summary judgement. [d/e 41].

## I. BACKGROUND

The plaintiff, a state prisoner, filed her complaint pursuant to 42 U.S.C. §1983. On June 25, 2007, the court conducted a merit review of the plaintiff's amended complaint and found the plaintiff stated the following claims:

    1) Defendant Ray Gubbles violated her Eighth Amendment rights by the use of excessive force on July 9, 2004;

    2) Defendant Andrew Grove violated her Eight Amendment rights when he failed to protect the plaintiff from the attack by Defendant Ray Gubbles on July 9, 2004;

    3) Defendants Ray Gubbles, Andrew Grove and Barbara Hoffmeyer violated the plaintiff's Fourth Amendment rights based on the unreasonable search and seizure of the plaintiff's personal mail;

    4) Defendants Ray Gubbles, Andrew Grove and Barbara Hoffmeyer violated the plaintiff's First Amendment rights based on interception and public reading of the plaintiff's personal mail on July 9, 2004;

    5) Defendants William Hurley and Tammy Bentley violated the plaintiff's Eighth Amendment rights when they were deliberately indifferent to the plaintiff's serious medical needs;

    6) Defendant Ray Gubbles committed the state law offense of assault and battery on July 9, 2004; and,

1

7) Defendant Ray Gubbles, Andrew Grove and Barbara Hoffmeyer committed the state law offense of intentional infliction of emotional distress.

## II.  FACTS

The following facts are taken from the defendants' motion for summary judgement and the plaintiff's response.

The plaintiff was housed at the Dwight Correctional Center from February of 2003 until March of 2007 when she was released from the Illinois Department of Corrections.  In July of 2004, the plaintiff was housed in the segregation unit.  (Def Memo, Ex.A, Plain Depo, p. 14)

On July 9, 2004, the plaintiff planned to mail out two letters, one to her mother and one to her boyfriend.  She put magazine subscriptions in the letter to her mother.  Defendant Officer Ray Gubbles opened at least one of the plaintiff's letters and read part of it over the prison intercom system. (Def. Memo, Ex. B, Gubbles Depo, p. 106)

The parties disagree about what was said over the intercom. The defendant claims he opened the letter with the magazine subscription and this is the letter he read over the intercom. (Def. Memo, Ex. B, Gubbles Depo, p. 106)  The plaintiff and her cell mate allege the defendant instead opened the letter to her boyfriend, announced it was "story time" and read personal, sexually explicit portions over the intercom. (Plain. Memo, Ex. A, Cornell Depo., p. 41, Ex. B, Parks Depo,  p. 58, 59).  The court also notes in an internal affairs report on the incident, Defendant Gubbles is quoted as saying the letter was a"juicy" letter. (Plain Memo, Ex. E).

The intercom system can be used throughout the entire wing, or an individual's cell.  It is not entirely clear from the record, but it appears Gubbles may have turned the intercom on only to the plaintiff's room.

The plaintiff became angry and threatened to report Gubbles to internal affairs for improper sexual contact with another female inmate and threatened to flood her cell. (Def. Memo, Ex. A.  Plain Depo, p. 44)   The plaintiff had flooded her cell in the past. (Def. Memo, Ex. A.  Plain Depo, p. 37).  A short time later, Defendant Hoffmeyer opened the plaintiff's cell and Defendant Gubbles rushed in.

Defendant Gubbles entered the plaintiff's cell without cuffing her first, and instead cuffed the plaintiff after he entered the cell. (Def. Memo, Ex. B, Gubbles Depo, p. 115).  The parties disagree whether Defendant Grove was in the cell at anytime during the incident.  The parties also disagree whether there was a struggle in the cell and whether  Defendant Gubbles used excessive force against the plaintiff.  Defendant Gubbles did not report the use of any force or

2

notify his shift commander about the incident. Defendant Gubbles says he did not feel an incident report was warranted. (Def. Memo, Ex. B. Gubbles Depo, p. 143)

During the next round check, the plaintiff showed Defendant Bentley her arm. The officer says it looked red and irritated (Def. Memo, Ex A., Cornell Depo. p.49, Ex. C, Bentley Aff., p. 96). The plaintiff says her arm did not bleed, nor did she suffer from an open wound. (Def. Memo, Ex. A, Cornell Depo., p. 47)

The plaintiff was examined in the Health Care Unit on July 13, 2004 by Nurse Krug. (Def. Memo, Ex. A, Cornell Depo. p. 51). The nurse took pictures of the plaintiff and the bruises she had on her body and wrote an incident report. (Def. Memo, Ex. A, Cornell Depo. p. 51). The plaintiff maintains she has bruises on her arm, breast and knees as well as a knot on her head. The plaintiff has provided copies of the pictures that were taken. Although the copies are not clear, the plaintiff appears to have several large bruises. There is a debate between the parties as to whether those bruises were the result of a scuffle with Defendant Gubbles.

Lieutenant Kevin White initiated an internal affairs investigation into the incident. The investigation concluded that Gubbles: (1) read Cornell's letter over the intercom; (2) used unauthorized force on Cornell; and (3) failed to report the use of force. (Plain Memo, Ex. J). The Internal Affairs report also recommended that Defendant Gubbles be referred to the Employee Review Officer for unprofessional conduct for reading the plaintiff's letter and for rule violation concerning the use of force and failure to report use of force. The plaintiff says he was given a written reprimand as a result of the incident. (Def. Memo, Ex. B, Gubbles Aff., p. 143)

### III.  LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by

3

"set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## IV. ANALYSIS

A. EXCESSIVE FORCE

The defendants first argue that any force used on July 9, 2004 did not rise to the level of a constitutional violation. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain." *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Excessive force is force applied "maliciously and sadistically to cause harm," as opposed to force applied "in a good-faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 5. Relevant factors include the need for force, the relationship between that need and the force applied, the threat reasonably perceived by the officers, the efforts made to temper the severity of the force employed, and the extent of the prisoner's injury. *Dealt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000), *citing Hudson*, 503 U.S. at 7.

"[W]hile significant injury is not required, a claim ordinarily cannot be predicated upon a de minimis use of force." *Dealt*, 224 F.3d at 619; *see also Outlaw v. Newkirk*, 259 F.3d 833, 839 (7th Cir. 2001). Nonetheless, " gratuitous infliction of pain always violates contemporary standards of decency and need not produce serious injury in order to violate the Eighth Amendment. Moreover, physical injury need not result for the punishment to state a cause of action, for the wanton infliction of psychological pain is also prohibited." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003).

The defendants argue that the plaintiff has admitted she threatened to flood her cell and officers were unable to turn the water off to her cell. The defendants maintain that flooded cells "disrupts order in the prison. " (Def. Memo, p. 6) The plaintiff had taken this action in the past and Defendant Gubbles was simply trying to quickly bring the plaintiff under control and prevent her from flooding her cell. The plaintiff also admits she was not bleeding and had no

open wounds, but suffered bruises as a result of the incident. "Defendant Gubbles used the force necessary to restrain the inmate so she would calm down and not flood her cell." (Def. Memo, p. 6)

The plaintiff argues that Defendant Gubbles response did not occur immediately after she made the threat to flood her cell, but at least ten minutes later. In addition, the plaintiff says she also threatened to turn in the defendant for inappropriate sexual contact with another female inmate before he entered her cell. The defendants further state there is no evidence Defendant Gubbles knew that the plaintiff had ever flooded her cell in the past. The defendants argue that a reasonable fact finder could find that "the only purpose for the force used was to inflict pain and humiliation." (Plain. Memo, p. 7-8).

There are also several unanswered questions before the court. Why was the plaintiff not handcuffed before the officer entered the cell? Is it prison policy to handcuff an inmate before entering when possible? Did the plaintiff refuse to cuff up? Was the plaintiff anywhere near the source of water in her cell when officers arrived? Did the plaintiff resist efforts to handcuff her once the officer was in the cell? The court finds there are genuine issues as to the material facts of this claim and the Defendant Gubbles is not entitled to judgment as a matter of law.

B. DEFENDANT GROVES

The defendants argue that the plaintiff cannot demonstrate that Defendant Grove failed to protect her from the attack. The defendants first argue that because Defendant Grove did not personally touch the plaintiff, he cannot be held liable. This is clearly not the law. This circuit has long recognized a "failure to intervene" basis for a constitutional violation under the Eighth Amendment. *See Miller v Smith,* 220 F.3d 491, 495 (7th Cir. 2000) *citing Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir. 1994); *see also Fillmore v Page,* 358 F.3d 496, 505-506 (7th Cir. 2004). The Seventh Circuit has said that "police officers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but fail to do so" could be held liable under §1983. *Miller*, 220 F.3d at 495. However, to succeed, the plaintiff must show that a "substantial risk of serious harm" existed and that the defendant subjectively disregarded that risk. *Farmer v. Brennan,* 511 U.S. 825, 834, 837 (1994)

The defendants also argue that there is no evidence that Defendant Grove knew that Officer Gubbles intended to use force against the plaintiff or harm her in any way. Therefore, he had no realistic opportunity to intervene. This is a much stronger argument. Nonetheless, the plaintiff contends that Defendant Groves came with Defendant Gubbles to the plaintiff's cell and helped Defendant Gubbles take the plaintiff to the ground. The plaintiff further claims that Defendant Groves watched and laughed as Gubbles kicked and drove his knee into the plaintiff's

back. It is not clear from the record before the court whether Defendant Groves could have intervened or not. The motion for summary judgement on this claim is denied.

C. DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL CONDITION

The defendants argue that the plaintiff cannot demonstrate that Defendants William Hurley and Tammy Bentley were deliberately indifferent to a serious medical condition. A plaintiff must pass both an objective and a subjective test in order to establish that the defendants violated the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). The first prong of the test requires the plaintiff to demonstrate that the alleged deprivation was sufficiently serious. *Id.* The Seventh Circuit has acknowledge that a "serious medical need" is far from "self-defining." *Gutierrez v Peters,* 11 F3d 1364, 1370 (7th Cir. 1997). However, the court noted that the Supreme Court clearly intended to include not only conditions that are life-threatening, but also those in which denial or delay in medical care results in needless pain and suffering. *Id.*

The second prong of the Eighth Amendment test requires the plaintiff to show that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42) Inadequate medical treatment due to negligence or even gross negligence does not support an Eighth Amendment violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987). In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997).

The plaintiff alleges that she showed her bruises to Officer Bentley after the attack and asked for medical care. The plaintiff claims Officer Bentley told her she could not report the incident to medical, but did get ice for the plaintiff. Officer Bentley denies this. The officer says she only saw the plaintiff's arm which appeared red and irritated, but not seriously injured. The officer says the plaintiff did not say she was in pain, nor did she ask for medical care. The officer says the plaintiff was more concerned about her mail.

The plaintiff says she showed her bruises to Officer Hurley the next day, but he just laughed. When the plaintiff saw Nurse Krug four days later, the nurse took pictures of the plaintiff's bruises, but noted that the bruises looked too old to be consistent with the plaintiff's claimed beating.

The defendants argue that the plaintiff did not suffer from a serious medical condition. In addition, the plaintiff did eventually receive medical care and has no evidence that the delay had

any detrimental impact.  The plaintiff counters that "[w]hen guards use excessive force on prisoners, the requirements of proving deliberate indifference to medical needs of the beaten prisoners ought to be relaxed somewhat." *Cooper v Casey,* 97 F.3d 914, 917 (7th Cir. 1996). The plaintiff points out that medical care was not delayed a few hours, but four days.

Despite the inconsistencies in the evidence, the plaintiff has failed to demonstrate that the delay in seeing medical personnel had any impact.   The plaintiff has presented no evidence that she was suffering in pain during the four days she went without medical care. In *Cooper,* the plaintiffs claimed they were beaten, kicked and maced by guards which resulted in cuts, severe muscle pain and burning. *Cooper,* 97 F.3d at 916.  While the plaintiffs did not have to show an objective injury, they did need to show an illness or injury that was "sufficiently serious or painful to make refusal of assistance uncivilized.." *Id.*

The plaintiff has not met this burden.  Nowhere in the facts before the court does she claim she was in pain during this four day time period or that she needed pain medication.  It also appears that when she did see a nurse four days later, she did not require treatment of any kind.   The motion for summary judgement on this claim is granted.

D.  OUTGOING MAIL/FIRST AND FOURTH AMENDMENTS

The defendants seem to suggest they have an absolute right to read the plaintiff's outgoing personal mail and that the plaintiff does not have Fourth or First Amendment rights regarding this mail.   The defendants cite to *Smith v. Shimp,* 562 F.2d 423, 425 (7th Cir. 1977) in which the Seventh Circuit held that prison officials could read non-priviledged mail, on a spot-check basis, in order to detect possible escape plans or other threats to jail security.   Several circuits have held that prison officials do not commit constitutional violations by reading prisoners' outgoing nonprivileged mail. *Busby v. Drake,* 359 F.3d 708 (5th Cir. 2004); *Glasser v Wood,* 14 F.3d 406 (8th Cir. 1994); *Stow v. Grimaldi,* 993 F.2d 1002 (1st Cir. 1993); *Altizer v. Deeds*, 191 F. 3d 540 (4th Cir. 1999).

However, courts have also indicated that there could be a violation for "surreptitious or otherwise unexpected intrusions upon privacy.." *Shimp,* 562 F.2d at 425.  The defendants do not explain how reading the plaintiff's letter over an intercom could be related to any security or safety concern.   On the other hand, the defendant did not censor or delay the plaintiff's mail.  It is also not clearly apparent that the incident rises to the level of a constitutional violation.  The motion for summary judgment on this issue is denied at this point.  However the court will require more briefing on the specific issue of whether Defendant Gubbles conduct of opening the letter and reading it over the intercom violated the First or Fourth Amendment.

The plaintiff does not claim that Defendants Grove or Hoffmeyer read her letter over the intercom or even opened her letter.  However, she does claim that she could hear these defendants laughing over the intercom while Defendant Gubbles read her letter.   The plaintiff has failed to state a constitutional violation against these two individuals.  The court will grant summary judgement for Defendants Grove and Hoffmeyer on the plaintiff's claims involving her mail.

E.  STATE LAW CLAIMS

The defendants argue that since the plaintiff has no underlying federal claims, this court does not have supplemental jurisdiction over her state law claims.  No further argument is offered.  The plaintiff does have surviving federal law claims and the court will require further briefing on the state law claims.

CONCLUSION

The defendants motion for summary judgement is granted in part and denied in part. [d/e 41].   The plaintiff has the following surviving claims:

1) Defendant Ray Gubbles violated her Eighth Amendment rights by the use of excessive force on July 9, 2004;
2) Defendant Andrew Grove violated her Eight Amendment rights when he failed to protect the plaintiff from the attack by Defendant Ray Gubbles on July 9, 2004;
3) Defendant Ray Gubbles committed the state law offense of assault and battery on July 9, 2004; and,
4) Defendant Ray Gubbles, Andrew Grove and Barbara Hoffmeyer committed the state law offense of intentional infliction of emotional distress.

Summary judgement is granted as to the plaintiff's claim that:

1)  Defendants William Hurley and Tammy Bentley violated the plaintiff's Eighth Amendment rights when they were deliberately indifferent to the plaintiff's serious medical needs; and
2) Defendants  Andrew Grove and Barbara Hoffmeyer violated the plaintiff's First and Fourth Amendment rights by the handling of the plaintiff's mail on July 9, 2004..

In addition, the court will require additional briefing from the parties concerning the plaintiff's claims that:

1) Defendants Ray Gubbles violated the plaintiff's First and Fourth Amendment rights based on the handling of the plaintiff's letters on July 9, 2004;

3) Defendant Ray Gubbles committed the state law offense of assault and battery on July 9, 2004; and,

4) Defendant Ray Gubbles, Andrew Grove and Barbara Hoffmeyer committed the state law offense of intentional infliction of emotional distress.

**IT IS THEREFORE ORDERED that:**

**1) The defendants motion for summary judgement is granted in part and denied in part as outlined in this order. [d/e 41]**

**2)   The parties are to provide additional briefing on the plaintiff's state law claims as well as her claims concerning the handling of her mail.   The defendants must file their supplemental brief on or before October 17, 2008.   The plaintiff must file a response on or before November 10, 2008 and the defendants may file a reply on or before November 17, 2008.**

Entered this 8th day of September, 2008.

s\Harold A. Baker
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

.