UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ADELAIDE CORNELL,
    Plaintiff,

vs.                                                                              05-1389

RAY GUBBLES, et al.
    Defendants.

## SUPPLEMENTAL SUMMARY JUDGEMENT ORDER

This cause is before the court for consideration of additional summary judgement briefing on the surviving claims as requested by the court on September 8, 2008.

## I. BACKGROUND

The pro se plaintiff originally filed her complaint pursuant to 42 U.S.C.§1983 against five defendants at Dwight Correctional Center. The plaintiff then retained counsel and filed an amended complaint.

On September 8, 2008, the court granted the defendants' motion for summary judgement in part and denied the motion in part. The plaintiff has the following surviving claims:

1) Defendant Ray Gubbles violated her Eighth Amendment rights by the use of excessive force on July 9, 2004;
2) Defendant Andrew Grove violated the plaintiff's Eighth Amendment rights when he failed to protect the plaintiff from the attack by Defendant Gubbles on July 9, 2004;

The court also required the parties to provide more briefing on the following surviving claims:

3) Defendant Gubbles violated the plaintiff's First and Fourth Amendment rights based on the handling of the plaintiff's letters on July 9, 2004;
4) Defendant Gubbles committed the state law offense of assault and battery on July 9, 2004; and
5) Defendant Gubbles, Andrew Grove and Barbara Hoffmeyer committed the state law offense of intentional infliction of emotional distress.

The parties have complied. However, the plaintiff has filed a motion to strike the brief provided by the defendants because it fails to meet the requirements of Local Rule 7.1 which requires a separate statement of undisputed facts. [d/e 54]  It is unfortunate that the defendants did not provide an additional statement of undisputed facts. However, the court will not strike the brief.   The court will not consider a statement by the defendants as a "fact" without some supporting evidence.  The motion to strike is denied.

II. FACTS

The following facts are taken from the first and second motions for summary judgement. There are still many disputed facts over key incidents which are noted below.

The plaintiff was housed at the Dwight Correctional Center from February of 2003 until March of 2007 when she was released from the Illinois Department of Corrections. In July of 2004, the plaintiff was housed in the segregation unit. (Def Memo, Ex.A, Plain Depo, p. 14). The segregation unit is an isolation unit for individuals considered to be more aggressive, and who have violated institutional rules. There are greater restrictions on inmates in segregation, but they do have the same mail privileges as inmates in the general population. (Def. Reply, p. 2).

The plaintiff states that when she sends out a non-privileged letter, it has to be left unsealed for so mail room staff can check for escape plans, contraband or other security violations. (Def. Memo, Ex. A, Cornell Depo, p. 34.)

On July 9, 2004, the plaintiff says she planned to mail out two letters, one to her mother and one to her boyfriend. She put magazine subscriptions in the letter to her mother. Defendant Officer Ray Gubbles says there was only one letter from the plaintiff which contained magazine subscriptions. He opened this letter and read part of it over the prison intercom system. (Def. Memo, Ex. B, Gubbles Depo, p. 104, 106)  Defendant Gubbles claims that some inmates send out magazine subscription cards for other inmates as a joke, and inmates are not allowed to use other inmates names and identification numbers listed. (Def. Memo, Ex B, Gubbles Depo, p. 103)

The parties disagree about what was said over the intercom. The plaintiff and her cell mate allege the defendant opened the letter to her boyfriend, announced it was "story time" and read personal, sexually explicit portions over the intercom. (Plain. Memo, Ex. A, Cornell Depo., p. 41, Ex. B, Parks Depo,  p. 58, 59).  Defendant Gubbles says the letter was a "love letter" but did not contain any sexual references. (Def. Memo, Ex. B, Gubbles Depo, p. 122) The court notes Defendant Gubbles is quoted in an internal affairs report on the incident as saying the letter was a"juicy" letter. (Plain Memo, Ex. E).

The intercom system can be used throughout the entire wing, or an individual's cell.  It is still not clear from the record whether the intercom was turned on for the wing or only the plaintiff's cell.

After the defendant read the letter, the plaintiff became angry and threatened to report Gubbles to internal affairs for improper sexual contact with another female inmate and threatened to flood her cell. (Def. Memo, Ex. A. Plain Depo, p. 44)   The plaintiff had flooded her cell in the past. (Def. Memo, Ex. A. Plain Depo, p. 37). Officers responded to the plaintiff's cell.

Standard procedure in the segregation unit requires an inmate to be handcuffed from behind before an officer enters the cell. (Def. Reply, p. 2).  Entering an inmates cell without

requiring them to cuff up is considered highly irregular and should only happen in the event of an emergency. (Def. Reply, p. 2)

Defendant Gubbles entered the plaintiff's cell without cuffing her first, and instead cuffed the plaintiff after he entered the cell. (Def. Memo, Ex. B, Gubbles Depo, p. 115). The parties disagree about what the plaintiff was doing when the defendant arrived at her cell and whether he gave the plaintiff an opportunity to cuff up.

The parties also disagree whether Defendant Grove was in the cell at anytime during the incident. The parties disagree whether there was a struggle in the cell and whether Defendant Gubbles used excessive force against the plaintiff. Defendant Gubbles did not report the use of any force or notify his shift commander about the incident. Defendant Gubbles says he did not feel an incident report was warranted. (Def. Memo, Ex. B. Gubbles Depo, p. 143)

The plaintiff is 4'11" tall and weighed approximately 144 pounds at the time of the incident. Defendant Gubbles is 5'11" and weighed approximately 260 to 300 pounds. (Def. Reply, p. 2).

During the next round check, the plaintiff showed Defendant Bentley her arm. The officer says it looked red and irritated (Def. Memo, Ex A., Cornell Depo. p.49, Ex. C, Bentley Aff., p. 96). The plaintiff says her arm did not bleed, nor did she suffer from an open wound. (Def. Memo, Ex. A, Cornell Depo., p. 47)

The plaintiff was examined in the Health Care Unit on July 13, 2004 by Nurse Krug. (Def. Memo, Ex. A, Cornell Depo. p. 51). The nurse took pictures of the plaintiff and the bruises she had on her body and wrote an incident report. (Def. Memo, Ex. A, Cornell Depo. p. 51). The plaintiff maintains she has bruises on her arm, breast and knees as well as a knot on her head. The plaintiff has provided copies of the pictures that were taken. Although the copies are not clear, the plaintiff appears to have several large bruises. There is a debate between the parties as to whether those bruises were the result of a scuffle with Defendant Gubbles.

Dwight Correctional Center has a Mental Health Unit (herein MHU) for inmates suffering from depression and other mental health issues. Defendant Gubbles had received specialized crisis-intervention training which required him to meet and talk with MHU inmate to determine if they needed professional help or to be placed on suicide watch. (Def. Reply, p. 2). Prior to the July 9, 2004 incident, Defendant Gubbles had approximately 15 to 20 crisis-interventions with the plaintiff. (Def. Reply, p. 2) Defendant Grove was also aware that the plaintiff had spent approximately one month in MHU prior to the incident.

Lieutenant Kevin White initiated an internal affairs investigation into the incident. The investigation concluded that Gubbles: (1) read Cornell's letter over the intercom; (2) used unauthorized force on Cornell; and (3) failed to report the use of force. (Plain Memo, Ex. J). The Internal Affairs report also recommended that Defendant Gubbles be referred to the Employee Review Officer for unprofessional conduct for reading the plaintiff's letter and for rule violation concerning the use of force and failure to report use of force. The plaintiff says he was given a written reprimand as a result of the incident. (Def. Memo, Ex. B, Gubbles Aff., p. 143)

III.  LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©.  Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  The party moving for summary judgment must show the lack of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000).  A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e).  In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added).  Personal knowledge may include inferences and opinions drawn from those facts.  *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991).  "But the inferences and opinions must be grounded in observation or other first-hand personal experience.  They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

IV. ANALYSIS

A.  FIRST AND FOURTH AMENDMENT CLAIMS

The defendants maintain that Defendant Gubbles did not violate the plaintiff's First or Fourth Amendment rights since he was simply conducting a spot check on the plaintiff's mail. The defendants point to the case of *Smith v Shimp,* 562 F.2d 423 (7th Cir. 1977) In this case, the Seventh Circuit held that prison officials could read non-privileged mail, on a spot-check basis, in order to detect possible escape plans, other security threats or contraband.

Defendant Gubbles more clearly develops his claims in this second brief.  The defendant argues that he saw the plaintiff's mail and noticed that magazine subscription cards were in the envelope.  Since the names on the cards did not match the letter, the defendant says he asked through the intercom about the names on the subscription cards.

Clearly the defendants' argument is not based on undisputed facts.  The plaintiff claims there were two letters, the defendant opened the letter without subscription cards and read embarrassingly intimate portions of the letter over the intercom.   If true, this would appear to be the kind of  "surreptitious or otherwise unexpected intrusion upon privacy by the government" that was not addressed in *Smith,* 562 F.2d 423; *see also Parrish v. Johnson,* 800 F.2d 600, 602 (6th Cir. 1986)("A capricious interference with a prisoner's incoming mail based upon a guard's personal prejudices violates the First Amendment."); *see also U.S. v. Salvage,* 482 F.2d 1371, 1372 (9th Cir. 1973)( "absent a showing of some justifiable purpose...the interception and photocopying of the letter was violative of the fourth amendment...")  The motion for summary judgement is denied.

B.  STATE LAW/ BATTERY CLAIM.

Defendant Gubbles states that he did not commit the offense of battery since he used only the force that was necessary to restrain the plaintiff and he is entitled to immunity for his actions.  Illinois courts define battery as the "unauthorized touching of another person." *Luss v Village of Forest Park,* 878 N.E.2d 1193, 1206 (1st Dir. 2007).   Defendant Gubbles correctly argues that correctional officers may touch inmates for the purpose of maintaining security and custody.  However, that "privilege exists only to the extent the means employed are not in excess of those which they reasonably believe are necessary." *Smith v. Mangrum,* 1996 WL 607001 at 9 (N.D. Ill. Oct. 21, 1996) Clearly there are material facts at issue as to why the force was used and how much forced was used.

The defendant also claims that he is entitled to public official's immunity. "It is well-settled that , pursuant to the doctrine of public official immunity state officials and employees are fully protected from liability for acts falling within their official discretion." *Midamerica Trust Company v. Mofatt,* 511 N.E. 2d 964, 966 (Ill.App.Ct. 1987).  However, this doctrine applies only in situations where there are no allegations of bad faith. *Magnuson v Cassarella,* 813 F. Supp. 1321 (N.D. Ill 1992).  The plaintiff alleges the defendant did not give her an opportunity to cuff up and she was not doing anything when he arrived at her cell.  Nonetheless, the plaintiff alleges the defendant attacked her and injured her.  If true, this would demonstrate a lack of good faith on the part of Defendant Gubbles.  The motion for summary judgement it therefore denied.

C. STATE LAW/ INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendants Gubbles, Grove and Hoffmeyer argue that the plaintiff cannot demonstrate that they committed the state law offense of intentional infliction of emotional distress.   To establish this claim, the plaintiff must establish: 1) that the defendants' conduct was extreme and outrageous; 2) that they intended their conduct to inflict severe emotional distress or knew there was a high probability their conduct would inflict such distresses; and 3) that their conduct did in fact cause severe emotional distress. *Thomas v Fuerst,* 803 N.E.2d 619, 625 (Ill. App. 2004). . "Whether conduct is extreme and outrageous is evaluated on an objective standard based on all facts and circumstances." *Id.*   Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions or trivialities." *Public Finance Corp. v. Davis,* 360 N.E.2d 765 (Ill.App. 1999).  Extreme and outrageous conduct is that which goes "beyond all bounds of

decency and [is] considered intolerable in a civilized community." *Honaker v. Smith,* 256 F.3d 477, 490 (7th Cir. 2001). In addition, "the degree of power or authority which a defendant has over a plaintiff can impact...whether that defendant's conduct is outrageous," and "the more control which a defendant has over the plaintiff, the more likely that the defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment." *McGrath v. Fahey,* 533 N.E.2d 806, 809-810 (1998). "[G]reater latitude is given to a defendant pursuing a reasonable objective even if that pursuit results in some amount of distress for a plaintiff." *Honaker,* 256 F.3d at 492.

The plaintiff has clearly not demonstrated that Defendants Grove and Hoffmeyer can be found to have committed the offense of intentional infliction of emotional distress. The plaintiff argues that while these defendants did not read her letter, they were laughing and egging Defendant Gubbles to read on. The plaintiff also argues that these defendants clearly had authority and power over the plaintiff and knew their conduct could cause severe emotional distresses. While the defendants did exercise power over the plaintiff, there also was no hint of a threat made to the plaintiff. In addition, the plaintiff has not presented evidence that Defendant Hoffmeyer was aware that the plaintiff had been in MHU or had crisis intervention. Even if the court were to assume the plaintiff's allegations are true, laughing at Defendant Gubbles actions does not rise to the level of the extreme and outrageous conduct required for this tort. The court will dismiss this claim against Defendants Grove and Hoffmeyer.

Defendant Gubbles is another matter. The plaintiff alleges that this defendant read extremely private and embarrassing passages of a love letter over a prison intercom. It is not entirely clear how many inmates or correctional officers could hear the reading. Defendant Gubbles also was clearly aware that the plaintiff had needed crisis intervention several times before the incident. The plaintiff can argue that this defendant's conduct was extreme and outrageous and intended to cause severe emotional distress. What is unclear is whether the plaintiff can properly demonstrated that she did in fact suffer from severe emotional distress. Nonetheless, the court will allow this claim to proceed against Defendant Gubbles since there are clearly disputed issues of material fact.

## CONCLUSION

The parties will proceed to bench trial on February 9, 2009 on the following claims:

1) Defendant Ray Gubbles violated the plaintiff's Eighth Amendment rights by the use of excessive force on July 9, 2004;
2) Defendant Andrew Grove violated the plaintiff's Eighth Amendment rights when he failed to protect the plaintiff from the attack by Defendant Gubbles on July 9, 2004;
3) Defendant Gubbles violated the plaintiff's First and Fourth Amendment rights based on the handling of the plaintiff's letters on July 9, 2004;
4) Defendant Gubbles committed the state law offense of assault and battery on July 9, 2004; and
5) Defendant Gubbles committed the state law offense of intentional infliction of emotional distress.

The court will dismiss the state law claim of intentional infliction of emotional distress against Defendants Grove and Hoffmeyer.  The court will also dismiss Defendant Hoffmeyer from this lawsuit as there are no surviving claims against this defendant.

**IT IS THEREFORE ORDERED that:**

1. **The plaintiff's motion to strike the defendants supplemental summary judgement brief is denied.  [d/e 54]**

2. **Based on the additional briefing provided, the court will grant summary judgement pursuant to  Fed. R. Civ. P. 56 on the plaintiff's claim that Defendants Grove and Hoffmeyer committed the state law offense of intentional infliction of emotional distress.   The surviving five claims outlined in this order will proceed to bench trial.**

3. **The clerk of the court is directed to dismiss Defendants Hoffmeyer, Bentley and Hurley as there are no surviving claims against these defendants.  *See* September 8, 2008 Court Order.**

4. **The final pretrial remains as set for pretrial conference on January 13, 2009 at 1:30 p.m.  *See* September 8, 2008 text order.**

Enter this 6th day of January, 2009.

s\Harold A. Baker

_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE